## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLAND DIVISION

| | |
|---|---|
| SHANA DENNY, on Behalf of Herself and All Others Similarly Situated, | |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| COLGATE PALMOLIVE COMPANY and TOM'S OF MAINE, INC., | |
| Defendants. | |

Plaintiff, Shana Denny ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against The Colgate Palmolive Company and Tom's of Maine ("Defendants").  Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds

$5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from at least one Defendant.

2. This Court has personal jurisdiction over Defendants. Defendants have sufficient minimum contacts with the state of Florida and purposefully availed themselves, and continue to avail themselves, of the jurisdiction of this Florida through the privilege of conducting its business ventures in the state of Florida, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

3. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendants do business throughout this district. The plaintiff made her purchase of Tom's of Maine toothpaste in Titusville, Florida, from a local retailer in this district, and her purchase of Tom's of Maine toothpaste was delivered to and used in this district.

## **THE PARTIES**

4. Plaintiff Shana Denny is a natural person and a citizen of Brevard County, Florida, residing in Titusville. Plaintiff purchased Tom's of Maine from a local retailer. Before her purchase, Plaintiff saw and reviewed Defendants' advertising claims on the packaging and labeling itself, and she made her purchase of the toothpaste in reliance thereon. Plaintiff specifically relied upon representations

made by Defendant. Plaintiff did not receive the promised benefits or the total value of her purchase. Plaintiff would purchase the product again if she was assured the product was not adulterated.

5. Defendant Colgate Palmolive is a publicly traded company whose principal place of business is located in New York.

6. Defendant Tom's of Maine is a U.S. manufacturing company whose principal place of business is located in Kennebunk, Maine. It is a majority-owned subsidiary of Colgate Palmolive.

7. Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## FACTUAL ALLEGATIONS

8. Tom's of Maine was founded by Tom and Kate Chappell in 1970 with a $5,000 loan, eventually growing into a $100 million business. The company is based in Kennebunk, Maine, and is a subsidiary of the multinational conglomerate Colgate-Palmolive, as of 2006. Tom's of Maine has approximately 120 employees. The company also employs factories elsewhere in the US and Canada via contract to produce some of their products.

3

9. The company's products are sourced and derived from nature, with formulas free of artificial flavors, fragrances, colors, sweeteners, and preservatives. The products are not tested on animals, and the company claims that its ingredient processing supports human and environmental health. While most of the company's products are vegan, some products contain propolis and/or beeswax sourced from bees.

10. In November 2024, the US FDA issued a warning to the company after it found disease-causing bacteria and mold-like powdery substances in Tom's of Maine products and facilities. (*See* FDA Letter attached as Exhibit 1) At least three species of harmful bacteria were found. The FDA also stated that Tom's had received hundreds of consumer complaints, but had not investigated them. The warning letter mandates that Tom's must submit multiple documents, including assessments and remediation plans for its operations, contamination hazards, testing methods, and cleaning procedures.

11. The company told CBS News that it is working with the FDA to resolve the issues the agency found in the Maine plant.

12. Tom's sells personal care products, such as toothpaste, mouthwash, lip balms and fragrances using "naturally sourced and naturally derived ingredients," according to its website. It is owned by Colgate-Palmolive, and its goods are sold in major retailers such as Whole Foods, Target, Walmart, and Kroger.

13. The FDA said despite the results of microbial tests it conducted, Tom's continued to distribute merchandise based on the test results of final products, but did not investigate the quality of water used in the process.

14. Defendant Tom's of Maine responded to the FDA by stating it is retrospectively looking into the incidents, and that the detection of Paracoccus yeei was due to a lab error.  However, the agency said there is no evidence of that.

15. Pseudomonas aeruginosa — which can cause infections in the blood and lungs, according to the Centers for Disease Control and Prevention — was also recovered in multiple water samples from June 2021 to October 2022. That water was used to manufacture Tom's Simply White clean mint paste, and for the final rinse of numerous equipment cleaning processes, the letter said.

16. The bacteria Ralstonia insidiosa was also recovered from water points of use.  The FDA found that batches manufactured after these incidents were released based on the microbial testing of the finished over-the-counter product despite the quality of the water used as a component or to clean the equipment. The FDA warned Tom's of Maine's investigation concluded, without sufficient justification, that the growth was due to sample contamination.

17. An FDA investigator also observed a "black mold-like substance" at the base of a hose reel and behind a water storage tank at the facility, which was within a foot away from equipment used for toothpaste production.

18. The FDA also found that Tom's failed to investigate hundreds of product complaints regarding odor, color, and taste because they did not indicate a trend. According to the FDA, Tom's responded by saying it handles complaints with a "risk-based approach," and that individual complaints are not enough to deem a product inadequate.

19. The FDA's letter also stated "Water is a major ingredient in many of your OTC drug products. It is essential that you employ a water system that is robustly designed, and that you effectively control, maintain, and monitor the system to ensure it consistently produces water suitable for pharmaceutical use."

## CLASS ACTION ALLEGATIONS

20. Class Definition: Plaintiff brings this action on behalf of herself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

21. **National Class**: All persons in the United States who purchased the Tom's of Maine products at issue during the fullest period of law.

22. In the alternative, Plaintiff brings this action on behalf of the following State Sub-Class:

23. **Florida Sub-Class**: All persons in the State of Florida who purchased the Tom's of Maine products at issue during the fullest period of law.

24. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

25. **Numerosity and Ascertainability**: Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands and that members of the Class are numerous and geographically dispersed throughout Florida and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendants' records, either manually or through computerized searches.

26. **Typicality and Adequacy**: Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

27. **Commonality**: The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

28. a. whether Defendant committed the conduct alleged herein;

29. b. whether Defendants' conduct constitutes the violations of laws alleged herein;

30. c. whether Defendants' labeling, sale and advertising set herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

31. d. whether Tom's of Maine toothpaste products are adulterated and/or misbranded under the Florida Health & Safety Code or federal law;

32. e. whether Defendant knew or should have known that the representations were false or misleading;

33. f. whether Defendant knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on Tom's of Maine toothpaste products;

34. g. whether Defendants' representations, concealments, and non-disclosures concerning the Tom's of Maine toothpaste products are likely to deceive the consumer;

35. h. whether Defendants' representations, concealments, and non-disclosures concerning the Tom's of Maine toothpaste products violate FDUTPA and/or the common law;

36. i. whether Defendant should be permanently enjoined from making the claims at issue; and

37. j. whether Plaintiff and the Class are entitled to a full refund, restitution, or other damages.

38. **Predominance and Superiority**: Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

39. given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent

Class members have no substantial interest in individually controlling the prosecution of individual actions;

40. when Defendants' liability has been adjudicated, claims of all Class members can be determined by the Court;

41. this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

42. without a class action, many Class members would continue to suffer injury, and Defendants' violations of law will continue without redress while Defendant continues to reap and retain the substantial proceeds of their wrongful conduct.

43. **Manageability**: The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

## COUNT I
### For Violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201 et seq.

44. Plaintiff incorporated by reference preceding paragraphs 1-19.

45. Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

46. Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

47. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that Tom's of Maine toothpaste products were suitable for use.

48. Plaintiff and Class members relied upon these advertisements in deciding to purchase Tom's of Maine toothpaste products.   Plaintiff's reliance was reasonable because of Defendants' reputation as a reliable company.

49. Had Plaintiff known that Tom's of Maine toothpaste product was not as advertised, she would not have purchased the product. As a result of Defendants' deceptive and unfair acts, Plaintiff and Class members have been damaged.

50. Defendants' conduct offends established public policy, and is immoral, unethical, oppressive, and unscrupulous to consumers.

51. Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

52. Defendants should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that its Tom's of Maine toothpaste products are adulterated.

## COUNT II
### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose and
### Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.

53. Plaintiff incorporated by reference preceding paragraphs 1-19.

54. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would be of uniform quality, color, and taste and capable of functioning reliably.

55. Defendants directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

56. Defendants knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires.

57. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would be of uniform quality, color, and taste and capable of functioning reliably.

58. Defendants' representations affirmed and promised that the Product would be of uniform quality, color, and taste and capable of functioning reliably.

59. Defendants described the Product so Plaintiff believed it would be of uniform quality, color, and taste and capable of functioning reliably, which became part of the basis of the bargain that it would conform to its affirmations and promises.

60. Defendants had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

61. This duty is based on Defendants' outsized role in the market for this type of product, a leading seller of toothpaste products.

62. Plaintiff recently became aware of Defendants' breach of the Product's warranties.

63. Plaintiff provided or provides notice to Defendants, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

64. Defendants received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

65. The Product did not conform to its affirmations of fact and promises due to Defendants' actions.

66. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not

conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would be of uniform quality, color, and taste and capable of functioning reliably.

67. The Product was not merchantable because Defendants had reason to know the particular purpose for which it was bought by Plaintiff, because she expected that it would be of uniform quality, color, and taste and capable of functioning reliably, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

## COUNT III
## Negligent Misrepresentation

68. Plaintiff incorporates by reference preceding paragraphs 1-19.

69. Defendants had a duty to truthfully represent the Product, which it breached.

70. This duty was non-delegable, based on Defendants' position, holding itself out as having special knowledge and experience in this area, an industry leader in toothpaste products.

71. The representations and omissions went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first that it has been known for.

72. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

73. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendants.

74. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

## COUNT IV
## Unjust Enrichment

75. Plaintiff incorporates by reference preceding paragraphs 1-19.

76. Plaintiff brings this cause of action on behalf of herself and on behalf of the Class.

77. Plaintiff and Class members conferred a benefit on Defendants by purchasing the adulterated Products.

78. Defendants received the monies paid by Plaintiff and Class members and thus knew of the benefit conferred upon them.

79. Defendants accepted and retained the benefit in the amount of the profits they earned from Defendant's Product sales paid by Plaintiff and Class members.

80. Defendants have profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

81. Plaintiff does not have an adequate remedy at law against Defendants.

82. Plaintiff and Class members are entitled to restitution of the amount paid for the Product and disgorgement of the profits Defendants derived from their deceptively advertised Product sales.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, pray for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

B. Directing that Defendants bear the costs of any notice sent to the Class(es);

C. Declaring that Defendants must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendants to make full restitution to Plaintiff and the members of the Class(es);

D. Awarding a full refund, restitution, and other appropriate equitable relief;

E. Granting an injunction against Defendants to enjoin them from conducting their business through the unlawful, unfair and fraudulent acts or practices set forth herein;

F. Granting an Order requiring Defendants to fully and appropriately recall the Products;

G. Ordering a jury trial and damages according to proof;

H. Enjoining Defendants from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

I. Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

J. Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

K. Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  November 21, 2024

<div style="margin-left: 40%;">

s/*William Wright*
The Wright Law Office, P.A.
William Wright
willwright@wrightlawoffice.com
Florida Bar No. 138861
Kelly Mata
kellymata@wrightlawoffice.com
Florida Bar No. 1015921
515 N. Flagler Drive, Suite 350
West Palm Beach, FL 33401
Telephone: (561) 514-0904

</div>